Note.—See under (1) 37 Cyc. pp. 1435, 1458, 1461, 1463. (2) 37 Cyc. pp. 1434, 1435, 1437. (3) 36 Cyc. p. 1147: 37 Cyc. p. 1458. (4) 37 Cyc. p. 1436. (5) 37 Cyc. pp. 1504, 1508.

---

## DUNN v. VAUGHAN.

No. 17022—Opinion Filed Oct. 5, 1926.

Rehearing Denied Dec. 21, 1926.

1. Sales—Implied Warranty of Machinery —Purchase After Thorough Try-Out.

In order for the seller of a piece of machinery to be liable on an implied warranty, the buyer must rely on what the seller told him about the article sold, but if he does not rely on it, but is familiar with

such machinery himself and takes it and tries it out thoroughly before he purchases it, and after such trial voluntarily purchases the same, there is no implied warranty, becase he acts on his own judgment, and not on what the seller tells him.

## 2. Bills and Notes—Attorney's Fee—Computation—Excessive Allowance.

Where a promissory note provides that in case suit is brought on said note, there shall be ten per cent. added as attorney's fees, it is error for the court to calculate the interest on the principal up to the date of the trial, and add it to the principal and then add 10 per cent. on the principal and interest as attorney's fees. The attorney's fees should be taxed as costs, and costs do not bear interest.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Hughes County; Geo. C. Crump, Judge.

Action by Joseph L. Vaughan against E. C. Dunn. Judgment for plaintiff. and defendant appeals. Judgment modified and affirmed.

Anglin & Stevenson and Forrest M. Darrough, for plaintiff in error.

Warren, Miller & Crutcher, Pryor & Stokes, and Hugh Murphy, for defendant in error.

Opinion by MAXEY, C. This is an action on a promissory note for $600 given as part payment on a tractor. The execution of the note is admitted, but the defendant sets up as a defense that the tractor was defective, and finally blew up, and defendant was unable to use it afterwards. Defendant also filed a cross-petition. wherein he sought to recover back the money he had paid. The testimony shows that E. C. Dunn bought this tractor from James L. Vaughan; that Vaughan had been demonstrating with the tractor in the neighborhood for something like a year, and that the price of it was $1,385, but that he offered to sell it to Dunn for $1,200; that he understood Dunn wanted it to plow with, and that he told Dunn to take it and try it out; and that if it was satisfactory he could have it for $1,200, to be paid in two promissory notes. Dunn took the tractor and plowed out about 15 acres of land, when the ground became so hard and tight that he quit trying to plow it, and put the tractor in a shed until the ground got in better season for plowing. Dunn testified that the tractor ran all right and did nice work until he put it away to wait for the ground to get in better condition for plow-

ing; that at the end of about 30 days from the time he took the tractor to try it out, he met Vaughan on the street, an dtold him they had better fix up those notes, and the two notes that he was to give were drawn up and he signed them. The tractor was not taken out and used any more until the following spring. It was then taken out and Dunn had a man, by the name of Carson, use it to plow some land that he wanted to plow; or, in other words, finish up the plowing he started in the fall before. Carson had plowed something like 20 acres, and on the day. it broke or blew up, he took it with him to the house and oiled it and put water in it, and after that he went out to plowing again, and only plowed a short time when it blew up. A rod broke and the magneto blew out, and a hole was blown in the side of the tractor. Dunn notified Vaughan about it, and Vaughan told him. that a. man by the name of Sales was the agent for that district, and that the matter would have to go through his hands anyway, and he had just as well take the matter up with Sales at that time. It was a couple of days before Dunn saw Sales. and Sales then went out and got the tractor and took it into a garage in Holdenville to have it gone over and determine what was the matter. The tractor was never fixed up and never removed from the garage. and so far as the record shows it was still there at the commencement of this suit. The evidence shows that Dunn was an experienced man in the handling of machinery, that he had been in the automobile business for several years, and that he had worked in the oil fields with engines, and was very familiar with all kinds of engines, although he says he never sold tractors, but had had some experience with them. The contention of Dunn is that there was an implied warranty that the tractor was all right and would do the work it was intended to do.

We think it was not seriously contended that there was an express warranty of the tractor, and unless it can be shown under the well-established rule that there was an implied warranty his defense must fail. Vaughan and Dunn were well acquainted and had been associated together in the automobile business prior to that time. Vaughan had been demonstrating with the tractor, and Dunn knew of this fact, and while he says that Vaughan told him the tractor was all right and in tiptop shape, Dunn took the tractor to try it out and plowed some 15 acres of land with it, when the land got so dry and hard that he put the

tractor away until the next spring and took it out then and plowed some 20 acres with it before it blew up.

The serious question in the case is, whether Dunn knew that Vaughan had been demonstrating with the tractor, and that he took it himself and kept it for about 30 days, and then voluntarily gave his notes for the purchase price. The question then arises, Did Dunn rely on anything that Vaughan told him about the tractor? or whether he relied on his own judgment and experience in handling engines and machinery. The case of Woolsey v. Siegler, 32 Okla. 715, 123 Pac. 164, defines an expressed warranty. See, also, Frey v. Failes, 37 Okla. 297, 132 Pac. 342, and International Harvester Co. v. Lawyer, 56 Okla. 207, 155 Pac. 617; and on the question of implied warranty, the following case is cited: Standard Sewing Machine Company v. New State Shirt & Overall Manufecturing Co., 42 Okla. 554, 141 Pac. 1111. We quote from the third and fourth paragraphs of the syllabus:

"In the absence of contract which negatives the same there is an implied warranty in the sale of sewing machines that they are suitable to perform the ordinary work for which they are made.

"The maxim of caveat emptor does not apply where the defect in the machine sold by its manufacturer while it is new upon the market is latent, is not discoverable upon examination, and renders the machine unsuitable to perform the ordinary work for which it is made."

There are so many cases in the books on express warranty and implied warranty, that we think the rule is too well established and understood to require the citation of many authorities.

In this case, there being no express warranty, we must see whether the facts make out a case of implied warranty. If Dunn had been an inexperienced man in the handling of such machinery, and it had been shown that he relied on the representations made to him by Vaughan, the agent of the tractor, a different case would be presented, but it is clear from the testimony that Dunn did not rely on anything Vaughan told him. He said Vaughan told him that the tractor was in tiptop shape and ran all right, and Dunn says he found it that way when he was using it himself, and that it ran all right up to the time it blew up. While the case was hotly contested on the trial, there is no complaint made in briefs of counsel to the admissibility of testimony, or to the rejection of the

testimony. Neither is there any complaint made to the instruction of the court to the jury. Not a single exception was saved to any of the instructions given by the court. The court instructed the jury on an implied warranty. In other words, the jury was instructed on all of the material issues in the case, without any objection being made to a single instruction. The jury found the issues in favor of the plaintiff, and under the well-established rule in this jurisdiction, that where a question of fact is submitted to the jury under proper instructions, the finding of the jury on such fact will not be disturbed by this court if there is any evidence tending to support the verdict of the jury, we think that the verdict of the jury in this case will have to stand.

There is another question raised in the brief of counsel which needs some consideration. The verdict of the jury reads as follows:

"We, the jury, impaneled and sworn in the above entitled cause, do upon our oaths find for the plaintiff, Jos. L. Vaughan, and fix the amount of his recovery at $600, with interest at ten per cent. W. T. Vinson. Foreman."

This verdict is not in proper form, and should have been corrected at the time. In the eighth instruction given by the court, the court instructed the jury that, if they found for the plaintiff, their verdict should be in the sum of $600, with interest thereon at the rate of ten per cent. from the 1st day of October, 1921, together with $60 as attorneys' fees. We think that the court had a right to calculate the interest, and also the attorneys' fees in rendering judgment. The court did calculate the interest from the 1st day of October, 1921, to the 15th day of June, 1925, the date of the verdict, and added the amount of interest to the principal, making the total amount $822.50, which should bear interest at the rate of ten per cent. per annum, from and after June 15, 1925, but the court in entering judgment inadvertently made the judgment read "with interest at the rate of ten per cent. from the 1st day of October, 1921." It is clear that this was an oversight or mistake, and should be corrected by changing the last paragraph of the journal entry so as to make it read "It is therefore, ordered, adjudged, and decreed by this court that the plaaintiff, Joseph L. Vaughan, do have and recover judgment against the defendant, E. C. Dunn, in the sum of $822.50, with interest thereon at the rate of ten per cent. from the 15th day of June, 1925, and

·the further sum of $60 attorneys' fees, to be taxed as costs and all other costs of this action, for all of which let execution issue."

It was error for the court to estimate the attorneys fee at 10 per cent. on the amount of principal and interest, but it should have only been estimated on the principal of said note and taxed as costs. The note provides that in case suit is brought on the note, the plaintiff should be entitled to 10 per cent. attorneys' fee, and in our judgment the face of the note was the basis for calculating the attorneys' fee, and not the face of the note, with the interest added. By the correction of the journal entry, as above indicated, and the requiring of plaintiff to file a remittitur, remitting the attorneys' fee down to $60, would, according to the record, show what the trial court intended to do, but through inadvertence or mistake in drawing the journal entry it got the interest period wrong.

We think the case was fairly tried and justice done, except for the mistake herein pointed out. The plaintiff is required to remit the attorneys fee down to $60 and correct the journal entry in accordance with this opinion, and as so corrected and modified. the judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. pp. 409, 410. (2) 8 C. J. p. 1102, §1437; 15 C. J. p. 109, §405.