## ABBOTT v. PEPPERS et al.

No. 21747. Opinion Filed June 7, 1932.

Chas. P. Abbott and MacDonald & MacDonald, for plaintiff in error.

Phillips & Boner, for defendants in error.

KORNEGAY, J. This case started in a justice of the peace court, wherein the plaintiff sought to recover the amount due on a note, executed by the defendants below, defendants in error here. A mortgage on a crop of peanuts had been given to secure the note, and there was a replevin order made in the case. The note declared on was dated February 25, 1928, and was due the 1st of June, 1928, and called for $162, payable at the Durant National Bank, Durant, Okla., with 10 per cent. interest from date until paid, and a 10 per cent. attorney's fee. It was signed by G. W. Peppers, H. R. Beavers, J. O. Peppers, and Frank Myers. The mortgage used was on a printed form used by the bank, and there was a clause in it showing that where the bank's name appeared the name of J. D. Abbott should be inserted, though the stenographer has it D. D. Abbott in one place.

In the justice of the peace court the plaintiff recovered, by unanimous jury verdict, the amount of the note, and the replevin action was sustained and judgment rendered accordingly. Appeal was had to the district court of Bryan county and the case was tried anew on the 25th of September, 1929. The parties agreed that the burden was upon the defendants in error to establish a defense to the note and mortgage sued on, which claim of defense was that the note had been given for the purchase price of some Irish seed potatoes, and

that the potatoes sold were worthless for seed purposes and therefore the consideration for the note had failed. There was a counterclaim set up, originally for damages arising from the preparation of the ground for the cultivation of the crop, with a prayer for damages on account of this, but evidently this was abandoned in the district court.

The burden being upon the defendants, the defendants opened the case and introduced as a witness the principal in the note and seven others as witnesses. The potatoes in question formed part of a shipment that had come directly from North Dakota and had been there inspected, and bore a tag of inspection, and the certificate on the tag bore the following language:

"North Dakota
"Registered Certified Seed
"To ---------------------------
---------------------------
"Official Tag.

"State law provides severe penalties for false seed certification * * *

"This tag should be so attached as to reasonably seal the container.

"Certified Potatoes
"Grower: Paul Lanz Alexander, N. D.
"Variety No. Triumph Class Improved seed.
"Inspector's No. 1625 Crop 1927 Certificate No. 1125.
"Remarks: Trace Rhizoctonia, Scab Present Therefore notify buyers before sale and delivery.
"Issued by C. V. Weber, 11/9 1927 1000 tags.

"Storage agreement.
"North Dakota Pure Seed Laboratory. State College Station, Fargo, N. D.
"Authorized Henry L. Bolley,
"State Seed Commissioner."

Peppers bought 40 bushels, taking them from the car to his house, dividing them with one of his codefendants, and they claimed that they planted them in properly prepared ground and they failed to germinate. The testimony concerning the sale of the potatoes was that they were sold as seed potatoes, but aside from this there were no words of warranty. The occasion of the sale was that the plaintiff below desired to plant a half carload of potatoes, and that a man by the name of J. W. C. Bell ordered a carload of potatoes out of which plaintiff was to get the potatoes he needed, and that when they came Bell was not able to pay for his part of them, and plaintiff, Abbott, took up the draft drawn against the ship-

ment, and not requiring all of them for seeding purposes, the overplus was sold to various parties in the community, part of whom appeared as witnesses for the defendant and part for the plaintiff. Some of the witnesses claimed that the potatoes which they planted did not germinate, but the testimony of others who planted the bulk of the potatoes claimed that theirs germinated well and made good crops. The plaintiff himself, who planted about half of the potatoes, claimed that they germinated well and yielded well.

At the conclusion of the testimony on behalf of the defendants, a demurrer and motion for directed verdict were interposed and overruled, and further testimony was introduced, and the court instructed the jury, and nine members returned a verdict against plaintiff in error, which was followed by a motion for new trial, assigning that the court had refused to sustain the demurrer and refused to instruct peremptorily for the plaintiff, and insufficiency of the evidence to sustain the verdict, and the court's rendering judgment on the verdict, and error in instructions to the jury, and in the admission of testimony. The motion for new trial was overruled and exceptions taken. The judgment ordered the payment to the defendant below of the proceeds of the sale of the peanuts that were embraced in the replevin suit, and supersedeas bond was given and the case brought here by proceeding in error.

A brief has been filed on behalf of plaintiff in error containing the statement of the case with no formal assignments of error, but accompanying the petition in error are ten specifications of error and an argument is made upon the insufficiency of the evidence to sustain the verdict. The case of Manglesdorf Seed Co. v. Busbee, 118 Okla. 255, 247 P. 410, is cited, as well as certain portions of Cyc, upon the proposition of warranty and the doctrine of caveat emptor, and the duties arising from inspection and concerning latent defects, and the inference to be drawn as to a warranty from circumstances connected with the sale. Complaint is made of the instructions given, and overruling of the demurrer and refusal to instruct peremptorily.

The defendants in error have submitted a brief giving a history of the case, setting out the judgment, and the position is taken as follows:

"By a careful reading of the pleadings and the instructions, it will be seen that this suit was on a promissory note given for the purchase of seed potatoes and that the defendants resisted the payment thereof on account of a failure of consideration, which

issue is stated in plaintiff's argument at the bottom of page 17 as follows:

" 'The defendants in their answer plead a special warranty, alleging in their answer that the plaintiff represented and stated to the defendants "that said potatoes were sound and free of disease and suitable and proper for seeding purposes." ' "

The contention is made that whether it be warranty or failure of consideration that is relied on, the jury passed on the matter, and this court should not review it, unless there is a total lack of evidence to sustain the verdict, or the verdict was obtained through fraud or misrepresentation or undue influence. The claim is made that there was an express warranty shown by the testimony as follows:

"Q. Anything said about whether they were seed potatoes? A. Yes, sir, he said they were North Dakota certified seed potatoes. Q. Did he say anything about whether they were good for seed purposes? A. Yes, sir, Mr. Abbott said they are high and be very careful with them and that they was good potatoes and certified. We was talking about seed potatoes."

Discussion is had as to whether it was an express warranty, and if there was none, was there a warranty implied by law? The deduction is made that most of the cases hold that where the seller knows that the buyer is buying for the purpose of planting, there is an implied warranty, and caveat emptor does not apply. Argument is made as to implied warranty as to the fitness of a machine, and Dunn v. Vaughn, 120 Okla. 240, 251 P. 472, J. B. Colt Co. v. Koehn, 128 Okla. 39, 260 P. 1061, and Tibbets & Pleasant v. Town of Fairfax, 145 Okla. 211, 292 P. 9, are quoted as machinery cases, and the brief-maker draws the inference that the rule ought to be stronger with reference to seed, and 35 Cyc. 399, 409, and some cases cited in note 83 thereto from Kansas and Minnesota and Missouri and New York and New Jersey. are called to our attention, and inferences from dealings are referred to, and the case of Miller v. Germain Seed Co. (Cal.) 222 P. 817, 32 A. L. R. 1215, is cited, as well as a reference to 24 R. C. L. 175.

There is some discussion of cases that go to good faith and fraud. So far as good faith and fraud are concerned, we do not find anything in the evidence to indicate anything except the best of faith on the part of the plaintiff below, who planted about half of the potatoes. So far as the warranty is concerned. the evidence fails to show any expressed warranty, and the only warranty that could be relied upon to displace the doctrine of caveat emptor, which is the usual doctrine applied, would be the state-

ment quoted about seed potatoes and the purposes for which they were sold. The evidence does not show that the plaintiff in error was a dealer in seed. In fact, during the progress of the testimony of the defendant in error, he stated that he did not know to start with that the note was made to Mr. Abbott, but thought it was made to Bell. However, had he inspected it, he would have known from the start that it was made to Abbott, and the evidence shows that the sale was made by Abbott, though he did not intend to be a dealer in potatoes when he started the transaction.

The rule laid down by Mechem on Sales, in cases of this character, is as follows:

"1311. No warranty implied on sale of ascertained chattel open to inspection. It is the well settled and general rule that, upon the present and executed sale of a definite, ascertained and existing chattel which is open to the inspection of the buyer, and of which the seller is neither the manufacturer nor the grower, no warranty whatever as to quality, fitness or condition is implied. In such cases, unless there is fraud or the seller gives an express warranty, the rule of the common law is practically without exception that the buyer purchases at his own risk. Caveat emptor is the invariable maxim. If the buyer wishes further protection than his own inspection or judgment can give him, he must exact a warranty.

"1312. Mere inconvenience of examination does not affect rule. The rule is not altered by the fact that the examination or inspection will consume time or is attended with labor and inconvenience. No exception to it can be admitted, to use the language of a leading case, except 'where the examination at the time of the sale is, morally speaking, impracticable, as where goods are sold before their arrival or landing. The mere fact of the inspection being attended with inconvenience or labor is not equivalent to its impracticability. If the purchaser desire to avoid it, and yet obtain the protection it would afford him. he must do so by exacting from the vendor an express warranty of quality.'

"1313. No implied warranty of quality as to obvious defects. There is clearly, therefore, no implied warranty against obvious defects. Neither, ordinarily. is there one as to latent defects, as will be seen in a subsequent section.

"1314. No implied warranty, in such cases, even though seller knew that chattel was bought for a specific purpose. It makes no difference ordinarily. in the application of the rule of caveat emptor (though it is material in other cases to be hereafter noticed), that the seller knew that the buyer intended the chattel for a specific purpose to which he erroneously supposed it to be adapted;

for here the buyer relies on his own judgment and not on the judgment of the seller.

"1315. The distinction which exists here was well stated in a New Hampshire case, often cited, in this way: 'In the case of executory contracts for the making or furnishing of goods or articles for a special use, the law implies a contract that the articles to be made or furnished shall be reasonably fit and proper for the use for which they are ordered. And when articles thus agreed to be made or furnished are delivered, the law implies a warranty that the articles are reasonably fit and proper for that use.

" 'But there is no implied warranty as to the quality of an article sold, nor of its fitness for any particular use, where there is a present sale of a particular existing article, then open to the examination and inspection of the purchaser, and where he requires no express warranty. To use the illustration of Maule, J., in Keates v. Cadogan, if a man says to another, "Sell me a horse fit to carry me," and the other sells him a horse which he knows to be unfit to ride, he may be liable for the consequences; but if a man says, "Sell me that grey horse to ride," and the other sells it, knowing that he cannot ride it, that would not make him liable.'

"1316. Or that the defect be latent. Neither does it make any difference in the application of this rule that the defect was latent, and not discoverable on examination, if the seller (not the manufacturer or grower) is guilty of no fraud. As was said by Mellor, J., in the leading case of Jones v. Just: 'Where goods are in esse, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim caveat emptor applies, even though the defect which exists in them is latent, and not discoverable on examination, at least where the seller is neither the grower nor manufacturer. The buyer in such a case has the opportunity of exercising his judgment upon the matter, and if the result of the inspection be unsatisfactory, or if he distrusts his own judgment, he may, if he chooses, require a warranty.

"1317. Unless the seller of goods with latent defects is the manufacturer or grower. Where, however, the seller is the manufacturer or grower a somewhat different rule applies. Usually the question arises in the case of the executory contract by the manufacturer or grower, or even a dealer to supply, according to his own judgment, an article to suit the buyer's need as disclosed to him; and this aspect of the subject is considered in a later section.

"But even in the case of the present sale of a specific chattel by the manufacturer or producer there is an implied warranty against latent defects growing out of the process of manufacture or production. of which defects the buyer was ignorant, which were not open to such observation as it was practicable for him to make, and which would render the article unfit for the use for which the seller knew it was designed, or unmerchantable, as the case may be."

Sections 1354 and 1355 of the same text are as follows:

"1354. Warranty of fitness by breeder or grower. The same general principles apply to sales by the grower or breeder of the thing sold. If the buyer informs the seller of his purpose, leaving to the latter the determination of that which will supply the need, and necessarily relying upon the seller's judgment rather than his own, the seller will be held to an implied warranty that the thing which he supplies will be suitable to the purpose; as, for example, that the seed that he sells will grow, or that an animal which he supplies is competent as a breeder.

"1355. But, on the other hand, where these elements are lacking, where the buyer relies on his own judgment, where a definite and ascertained article is agreed upon, and the buyer gets the very thing he bargained for, there will be no warranty implied that it is suitable, notwithstanding that the seller was the grower and knew the purpose of the buyer.

"And what is true of the grower or producer is equally true of the dealer in like articles under similar circumstances."

The Supreme Court of the United States, in the case of Barnard v. Kellogg, 77 U. S. 383. 19 L. Ed. 989, in discussing the rule of caveat emptor, says:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies. Such a rule, requiring the purchaser to take care of his own interests, has been found best adapted to the wants of trade in the business transactions of life. And there is no hardship in it, because if the purchaser distrusts his judgment he can require of the seller a warranty that the quality or condition of the goods he desires to buy corresponds with the sample exhibited. If he is satisfied without a warranty, and can inspect and declines to do it, he takes upon himself the risk that the article is merchantable. And he cannot relieve himself and charge the seller on the ground that the examination will occupy time, and is attended with labor and inconvenience. If it is practicable, no matter how inconvenient, the rule applies. One of the main reasons why the rule does not apply in the case of a sale by sample, is because

there is no opportunity for a personal examination of the bulk of the commodity which the sample is shown to represent. Of such universal acceptance is the doctrine of caveat emptor in this country, that the courts of all the states in the Union where the common law prevails, with one exception (South Carolina) sanction it."

As applied to the present case, the plaintiff in error would not come within the definition of manufacturer or grower. The potatoes gotten by the defendant in error were open for inspection by him, if he so desired, at the time he took them from the car. They had not been handled by the plaintiff in error as an ordinary dealer does, but had been merely shipped to him, and the opportunity of the buyer to know where they came from was equal with his own, and the opportunity for inspecting the particular potatoes before planting, in fact, was much greater for the defendant in error than it was for the plaintiff in error, and specific articles were bought that were before the defendant in error. There was no express warranty, and the fact that the buyer was buying the potatoes for seed does not, in our judgment, under the authorities cited, make out a case of implied warranty, and there is no evidence whatever in the case of any misrepresentation, from which rights might arise, to displace the usual doctrine applicable here of caveat emptor.

There is a decision that is called to our attention of this court in a seed case, that appears to be applicable and to bear upon the proposition, as to whether or not the rights of the parties were affected by the agricultural seed law. Evidently all parties tried the case on the theory that the certificate of inspection that had come from the department, whence the shipment came, was sufficient under our law to comply with the regulations. The case referred to is the case of Manglesdorf Seed Co. v. Busby, 118 Okla. 255, 247 P. 410, opinion filed on the 22nd of June, 1926, and a companion case of Manglesdorf Seed Co. v. Williams, 118 Okla. 258, 247 P. 413. The case of Geren v. Courts Trading Co., 99 Okla. 170, 226 P. 369, opinion filed May 13, 1924, is there reviewed.

The instruction given by the court below, to which exception was saved, after reciting the plea of failure of consideration set· up in the answer, in instruction No. 2 told the jury to find for the plaintiff on the note, and added this qualification:

"* * * unless you further find from a fair preponderance of the evidence that the potatoes sold to the defendants for planting purposes were worthless and would not germinate, and you further find that in the handling and planting of said potatoes it was done in a workmanlike manner, and you further find that the weather conditions after the defendants received said potatoes before and after they were planted did not destroy the germination thereof, then your verdict should be for the defendants."

We think that the instruction here given, in the light of the admitted facts in the case, was tantamount to telling the jury that the germinating power of the potatoes had been warranted by the plaintiff below, solely from the fact that he sold them as seed potatoes. We think under the rule that is laid down by the text-writer and by the Supreme Court of the United States, and by this court in the case cited, there was no express warranty under the evidence, and that there was no implied warranty merely by virtue of the fact that the potatoes were sold for seed, under those cases.

As applied to the evidence in the case, the court below would have been warranted in sustaining the demurrer on the admitted facts, and we think that the evidence did not warrant the findings made by the jury. The case is reversed, with the directions to grant a new trial and to proceed in accordance with the views herein expressed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., and ANDREWS, J., absent.

Note.—See under (1), annotation in 6 L. R. A. 73; 16 A. L. R. 859; 32 A. L. R. 1241; 62 A. L. R 452; 24 R. C. L. 175, 179; R. C. L. Perm. Supp. pp. 5427, 5428; R. C. L. Pocket Part, title Sales, § 452.