## HARRELL v. PETERS CARTRIDGE CO.

No. 2065.    Opinion Filed January 21, 1913.

(129 Pac. 872.)

1.  **CORPORATIONS—Foreign Corporations—Actions—"Doing Business."** Where a domestic mercantile corporation enters into a contract with a foreign manufacturing corporation, whereby the domestic concern agrees to handle the manufactured products of such nonresident corporation, and where it is provided in such contract that the domestic corporation shall purchase such products in its own name upon orders to be filled in another state by such foreign corporation, and that, when so purchased, the goods become the property of the domestic corporation, and such domestic corporation sells such goods throughout the state through its traveling agents, held, that such transactions do not constitute "doing business" within the state by the nonresident corporation, but the transactions between the two corporations are purely interstate, and therefore service of summons upon the domestic corporation is not service on the foreign corporation.

2.  **SAME.** Where a foreign manufacturing corporation having such a contract sends its traveling agents into the domestic state for the purpose of advertising the goods, and pushing the sales by giving exhibitions and demonstrations of the merits of such goods, and by assisting the agents of the domestic corporation in getting customers and orders for such goods, such orders to be filled by the domestic corporation out of its stock, such acts or transactions on the part of such agents do not constitute "doing business" within the state by the foreign corporation, and service of summons upon the Secretary of State is not valid service on the foreign corporation.

(Syllabus by Harrison, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by Lafayette Harrell, by his next friend, Alice L. Nicum, against the Peters Cartridge Company. From an order setting aside a judgment for plaintiff, he brings error. Affirmed.

This is an action for damages alleged to have been sustained through the negligence of defendant at a shooting exhibition at which defendant was demonstrating the merits of its cartridges. One Murrelle, an expert marksman in the employ of defendant company, was giving an exhibition of the merits of defendant's cartridges by pitching up plates of steel, and shooting through them while in the air. From one of the shots either some pieces of steel or pieces of the bullet glanced or rebounded, striking plaintiff, Harrell, causing a flesh wound on his head, and one piece striking him in the eye, bursting the eyeball. Summons was issued and served on the Oklahoma City Hardware Company, a corporation, then handling some of defendant's products. Defendant appeared specially, and moved to quash the service on the ground that defendant was a foreign corporation, and that the Oklahoma City Hardware Company was not the agent of defendant. Motion was sustained setting aside the service of summons. Thereafter the cause was permitted to lie dormant for a period of about nineteen months. On July 14, 1909, an alias summons was procured and served on the Secretary of State. In October thereafter the default judgment was rendered in favor of plaintiff in the sum of $9,818.90. Some 23 days thereafter defendant appeared specially by attorneys, and moved to vacate such judgment on the principal ground that the service of summons was not sufficient to give the court jurisdiction over defendant. At a hearing of such motion, at which evidence in support of same was offered, the motion was sustained and judgment set aside. From the order of the court setting aside the judgment the plaintiff appealed to this court.

*M. Fulton,* for plaintiff in error.

*Wilson & Harris* and *John Tomerlin,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). The decisive question involved is whether the service had upon the Secretary of State was valid and binding against defendant. This question depends wholly upon the fact whether or not this defendant was "doing business" within the state within the meaning of the term.

Plaintiff in error contends that the Peters Cartridge Company, although a foreign corporation, was doing business within the state of Oklahoma through the Oklahoma City Hardware Company as its authorized agent, and that having an agent within the state transacting business for the defendant and making contracts within the state for defendant, brought it within the meaning of the term "doing business" within the state, and, having designated no agent on whom service of process might be made, that service of summons upon the Secretary of State was valid under section 3, art. 1, Sess. Laws 1909, c. 10. On the other hand, it is contended by defendant in error that the Oklahoma City Hardware Company was not defendant's agent; that it had no agent in Oklahoma; that the Oklahoma City Hardware Company 'had no authority from defendant to transact business for it and in its name within the state and had not transacted business for it, but that the relations between defendant and the Oklahoma City Hardware Company were that of a local jobber purchasing goods as it needed them in job lots from defendant, and that the transactions between them were purely interstate in character; that being a nonresident of the state, and having no agent within the state authorized to make interstate contracts, and having no knowledge of such default judgment until so informed by a disinterested party after the rendition of same, such service was invalid, and such judgment void for want of jurisdiction.

The facts are: That the Oklahoma City Hardware Company was a domestic corporation under the laws of Oklahoma with its place of business in Oklahoma City, and that defendant company was a foreign corporation organized under the laws of the state of Ohio with its manufacturing plant and principal office at Kings Mills, Ohio; that prior to the date of the injury in controversy the defendant company and the Oklahoma City Company entered into a contract or agreement by which the defendant agreed to sell its products to the Oklahoma City Company on terms and under conditions set forth in the contract which is headed as follows:

"Agreement by and between the Peters Cartridge Company

of Cincinnati, Ohio, first party, and Oklahoma City Hardware Company of Oklahoma City, Oklahoma, second party."

The first paragraph of section 1 of such contract reads as follows:

"That said first party agrees to sell goods of its own manufacture to said second party for its current needs at prices and on terms and conditions as stated below."

The contract then gives the prices at which the goods were to be sold and delivered, then gives the terms upon which they are to be sold, then the conditions which are as follows:

"Orders shall not be binding on said first party unless accepted in writing from the Cincinnati office and such accepted orders shall be filled as promptly as possible after specifications have been received, subject to unavoidable accidents or hindrances. * * * Said first party agrees that if all invoices of its goods purchased by said second party are paid promptly, in accordance with the terms and conditions named herein, to allow said second party, in remitting, to deduct from net amount of said invoices the following special discounts. * * * "

The contract then details different kinds of goods and discounts to be allowed on same for payment in cash or within the terms mentioned in the contract, some to be paid for in 60 days, some to be paid for on the 10th of the succeeding month, and provides further:

"Second party agrees that it will pay for all goods purchased under this agreement in strict accordance with the terms and conditions stated herein. * * * "

It further provides that, on any invoice of goods remaining unpaid for 30 days after same became due, all unpaid invoices should thereupon become due, and all unfilled orders should be canceled; that the second party shall be protected against declining prices on any unsold goods shipped within 90 days immediately preceding such decline, provided the second party has complied with all the conditions of the contract, and, in consideration of the advantages of the terms and prices given, the second party agreed to push the sale of this line of goods, and further provided that the agreement might be terminated by either party upon written notice and that thereafter all unfilled orders should be null and void.

S. E. Clarkson, president of the Oklahoma City Hardware Company, being called as a witness in behalf of the plaintiff, testified:

"Q. They ship you the goods out here as you order them, or how? A. We simply send in our order the same as for any other merchandise item, and they ship to us, and we pay them in the usual way."

The witness further testified that the Oklahoma City Hardware Company sent out its traveling salesmen to sell this and other lines of goods, and that the orders taken were sent in to the Oklahoma City Hardware house to be filled and were filled out of stock on hand the same as other orders, and in reference to orders taken by traveling salesmen sent out by the defendant company the same witness testified that such orders were also sent in to the Oklahoma City Hardware house to be filled by it out of its stock, and that such orders were so filled. The witness states:

"We have our salesmen on the road, and they are covering the entire territory selling the goods for the Oklahoma City Hardware Company, and we are selling the Peters goods along with our other lines of stuff."

The witness further stated that the profits to the manufacturer were outside of its retail profits; that the manufacturer's profits came out of the profits paid them for the goods by the Oklahoma City Hardware Company.

F. C. Tutle, of Cincinnati, Ohio, secretary and treasurer of the Peters Cartridge Company, testified to having charge of all contracts and correspondence of said company with its customers, and that it had no other contract or understanding with the Oklahoma City Hardware Company than the written contract referred to. On cross-examination the witness was asked:

"Q. The Oklahoma City Hardware Company, under this contract, sent in orders in accordance with the terms of the contract with shipping directions, and those orders were filled from your works in Warren county, Ohio, and shipped to Oklahoma City; is that true? A. It is. * * * Q. And there is no contract of commissions or anything of that sort between you and the Oklahoma City Hardware Company, and no contract other than this which you have produced? A. The contract produced

is the only contract of any kind. * * * Q. Have you any other connection with the Oklahoma City Hardware Company, or S. E. Clarkson, than that of seller on your part and purchaser on their part of your goods? A. None whatever. Q. Is there any officer, president, secretary, treasurer, member of the board of directors, managing agent, or any agent of any kind or character of the Peters Cartridge Company located in the territory of Oklahoma, or has there been any such officer or agent at any time? A. None now, and there has been none."

The witness further testified that, in order to boost the sale of their manufactured products, it was their custom to send experienced salesmen into the territory of their jobbers to assist and educate the traveling salesmen of such jobbers in selling their goods. He also testified that it was their custom to send out expert marksmen who gave shooting exhibitions in order to demonstrate the merits of their manufactured products.

W. E. Kepplinger, vice president of defendant company, testified, in substance, to the same facts testified to by Tutle. There was no evidence showing any other relation between the defendant company and the Oklahoma City Hardware Company than that of buyer and seller under the contract between them. This is the substance of the material testimony as to what relations existed between the Oklahoma City Hardware Company and the defendant. The question then is: Do these facts show such a relation as would constitute "doing business" within the state?

Counsel for plaintiff in error cite numerous authorities in support of its contention, a number of which are cited in support of the validity of the statute authorizing service to be made on the Secretary of State, where the foreign corporation had neglected or refused to appoint an agent upon whom service might be had. These authorities, however, are not decisive of any feature of the question involved in the case at bar. They merely uphold the validity of such statute on the assumption that the foreign corporations were in fact "doing business" within the state. They further cite a number of authorities in support of the contention that foreign corporations "doing business" in a state are held to impliedly assent to the laws of such state as to the modes of service upon a foreign corporation. These authorities

are not pertinent to the question before us, for they likewise hold to the doctrine of implied assent on the assumption that the foreign corporations were actually "doing business" within the state. Counsel then cites a number of authorities on what constitutes "transacting business within the state." We have read all of the authorities cited by counsel on this question, and find that none are based upon a state of facts similar to those in the case at bar, and each is based upon a state of facts which shows conclusively that the foreign corporations were "doing business" within the state.

In *Van Dresser v. Oregon Ry. & Nav. Co. et al.* (C. C.) 48 Fed. 202, cited by counsel for plaintiff in error, section 2 of the syllabus discloses the facts upon which the decision is based, and reads as follows:

"The Union Pacific Railway Company, having formed a combination under the name of the 'Union Pacific System,' with various other companies, including the Oregon Short Line Company, which operates a railroad in Washington, and being engaged in making contracts therein for freight and passenger service under the name of the system, must be considered as doing business in that state; and a service of summons upon an agent therein, who is authorized to act for all the companies of the system, is a service upon the corporation."

In *Swarts v. Christie Grain & Stock Co.* (C. C.) 166 Fed. 338, cited by plaintiff in error, the court held that the service was not good, for the reason that the facts did not disclose that the defendant was "doing business" within the state.

In *Central of Ga. R. Co. v. Eichberg*, 107 Md. 363, 68 Atl. 690, 14 L. R. A. (N. S.) 389, the suit was against two connecting lines of carriers, both having the same agent within the state.

In *Wold v. J. B. Colt Co.*, 102 Minn. 386, 114 N. W. 243, the court held:

"The agent upon whom service may be made must be an agent in fact, not merely by construction of law. He must be one having in fact representative capacity and derivative authority."

In this case the service was quashed.

In *Green v. C., B. & Q. Ry. Co.* (C. C.) 147 Fed. 767, the facts were that the defendant had incorporated under the laws of Illinois; that it ran its lines through the state of Pennsylvania, and while operating such lines had designated an agent in such state upon whom service might be had; that subsequently the company leased its lines to an Iowa corporation, which thereafter operated same. The designated agent of the lessor in Pennsylvania testified that he had thereafter performed the same services for the lessee that he had previously for the lessor. The court held that it did not appear that defendant was "doing business" in Pennsylvania, and that the federal court in that state did not acquire jurisdiction of defendant by service of process upon such designated agent of the lessor; it not appearing that it was, in fact, "doing business" in that state.

In *Paulus v. Hart-Parr Co.*, 136 Wis. 601, 118 N. W. 248, a foreign corporation had been licensed to do business in Wisconsin, which license was subsequently revoked, but after the cause of action arose. The court in that case held the service to be good as long as any liability of the defendant remained outstanding in the state.

*Commercial Mutual Accident Co. v. Davis*, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782, is a case where an agent was sent into the state duly authorized to transact business and make settlements in the name of the company.

In *Grant v. Cananea Consolidated Copper Co. et al.*, 189 N. Y. 241, 82 N. E. 191, the service was held to be good because it was had upon the president and manager of the defendant corporation residing in the state of New York.

None of these decisions are applicable to the state of facts involved in the case at bar.

In determining the question whether the Peters Cartridge Company was doing business within the state, there are two features or two separate groups of facts to be considered and to be considered separately: First. Whether the relations between the Oklahoma City Hardware Company and defendant were such as to constitute the Oklahoma City Hardware Company the agent of defendant. Second. Whether the acts of the

expert marksmen in demonstrating the merits of defendant's products were such acts as would constitute "doing business" within the state. As to the first proposition, whether the Oklahoma City Hardware Company was acting as the agent of defendant, we have been unable to find any authority which held that similar relations to those between the Hardware Company and defendant constituted a domestic concern as the agent of a foreign corporation. The facts in this record show simply that the Hardware Company purchased these goods at stipulated prices, under stipulated terms and conditions, and paid for them itself and sold them in its own name. There is no provision in the contract between them which justifies any inference other than that all such goods after being purchased by the Oklahoma City Hardware Company belonged to said company, and, if they remained unsold, they remained so as the property of the Oklahoma City Company, and not of defendant.

In 13 Am. & Eng. Enc. of Law (2d Ed.), under the head "What constitutes doing business in this connection," on page 870, the rule is announced as follows:

"In regard to sales by foreign corporations in the domestic state, the following rulings have been made: The constitutional and statutory provisions are not violated by a sale of goods to citizens of the domestic state by a foreign corporation through traveling salesmen on orders approved at the home office, or by a shipment of goods by a foreign corporation into the domestic state on an order given outside of the state, or by a sale of goods in the domestic state by a foreign corporation through its itinerant salesmen, or by a shipment of goods by a foreign corporation to a citizen of the domestic state on an unsolicited order, or by the placing by a foreign corporation of its products in the hands of local merchants in the domestic state to be sold on commission, or by a consignment of goods by a foreign corporation to factors in the domestic state to be sold by the factors and the proceeds collected and accounted for by them, or by a contract by a foreign corporation with a citizen of the domestic state to furnish, deliver, and set up for him within the domestic state certain machinery, and an acceptance in payment therefor of the purchaser's notes secured by mortgage on real estate situated within the state. In all the cases enumerated it may be stated without fear of contradiction that even if it be conceded that these stat-

utes were applicable to foreign corporations, they would still be inoperative as being in violation of the Interstate Commerce Act."

See, also, notes and authorities cited.

"Interstate commerce, or commerce among the several states of the Union, is commerce which concerns more than one state. Strictly considered, it consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities." (17 Am. & Eng. Enc. of Law, 61, and authorities cited in notes 3 and 4.)

"The negotiation in one state of sales of goods which are in another state, for the purpose of their introduction into the former state, constitutes interstate commerce. Where parties in one state order goods from persons or corporations in another state, and the goods are shipped into the state, although with a draft attached to the bill of lading the transaction is one of interstate commerce." (Id., 65, 66, and authorities cited in notes.)

Hence it is very clear from the above authorities that the relations and transactions between the Oklahoma City Hardware Company and the Peters Cartridge Company as shown by the evidence in the record were purely interstate transactions, and, being such, they constituted interstate commerce, and did not constitute "doing business" within the state. It therefore follows that service on the Oklahoma City Hardware Company or S. E. Clarkson, its president, was not a valid service on defendant.

The next question is whether the acts of H. A. Murrelle, the expert marksman who traveled through the state giving shooting exhibitions in order to advertise and demonstrate the merits of defendant's products, and who sometimes took orders, but under the evidence sent such orders to the Oklahoma City Hardware house to be filled out of its stock—whether his acts were such acts of an agent as would constitute "doing business" within the state by the Peters Cartridge Company. The sale of goods in the domestic state by a foreign corporation through its itinerant salesmen has almost universally been held to not constitute "doing business" within the domestic state. See 13 Am. & Eng. Enc. of Law, 870, and authorities cited in note 3.

In *Blakeslee Mfg. Co. v. Hilton,* 5 Pa. Super. Ct. 184, it was said:

"The words 'doing business,' as used in the act, should not be construed to mean taking orders or making sales by sample by agents coming into our state from another for that purpose. To hold otherwise would make the act offend against the Constitution of the United States as imposing unlawful restrictions on interstate commerce. * * * A corporation of one state may send its agents to another to solicit orders for its goods or contract for the sale thereof without being embarrassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions."

See, also, *Belle City Mfg. Co. v. Frizzell,* 11 Idaho, 1, 81 Pac. 58; *De Witt v. Berger Mfg. Co.* (Tex. Civ. App.) 81 S. W. 334; *Brin v. Wachusetts Shirt Co.* (Tex. Civ. App.) 43 S. W. 295; *Gale Mfg. Co. v. Finkelstein,* 22 Tex. Civ. App. 241, 54 S. W. 619; *Tallaposa Lbr. Co. v. Holbert,* 5 App. Div. 559, 39 N. Y. Supp. 432; *McNaughton Co. v. McGirl,* 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610.

"Any law which provides that the sale of goods by a foreign corporation through soliciting agents, who take orders subject to approval at the home office, is doing business within the state, is void, because it is an interference with interstate commerce." (*Davis & Rankin Mfg. Co. v. Dix* [C. C.] 64 Fed. 406.)

Also *Coit & Co. v. Sutton,* 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; *St. Clair v. Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; *Boardman v. McClure Co.* (C. C.) 123 Fed. 614; *Cummer Lbr. Co. v. Ins. Co.,* 67 App. Div. 151, 73 N. Y. Supp. 668, judgment affirmed 173 N. Y. 633, 66 N. E. 1106; *March-Davis Cycle Co. v. Strobridge Lithographing Co.,* 79 Ill. App. 683; *Havens & G. Co. v. Diamond,* 93 Ill. App. 557.

In *Mearshon & Co. v. Pottsville Lbr. Co.,* 187 Pa. 12, 40 Atl. 1019, 67 Am. St. Rep. 560, Mr. Justice Green, delivering the opinion of the court, said:

"Mr. Justice Wickham, delivering the opinion of the court, said: 'All that is hereby alleged is entirely consistent with the conduct of a foreign corporation engaged in strictly interstate commerce. It may advertise its goods, take orders, make contracts of sale respecting the same, and ship them to customers

in this state. It may also employ agents living in Pennsylvania to go from county to county, from town to town, and from person to person, to secure orders. Or the agent may never go outside of his own county, city, or town, thus being in one sense a local agent, and yet be doing a business which is not, and cannot be, reached under our Act of 1874 [Act April 22, 1874 (P. L. 108)]. * * * The words "doing any business," as used in the act, should not be construed to mean taking orders or making sales by sample by agents coming into our state from another for that purpose. To hold otherwise would make the act offend against the Constitution of the United States, as imposing unlawful restrictions on interstate commerce. *Manufacturing Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739 [28 L. Ed. 1137]; *Robbins v. Shelby Co. Taxing Dist.,* 120 U. S. 489, 7 Sup. Ct. 592 [30 L. Ed. 694]; *Brennan v. City of Titusville,* 153 U. S. 289, 14 Sup. Ct. 829 [38 L. Ed. 719], and a number of other cases.' "

See, also, *R. I. Plow Co. v. Peterson,* 93 Minn. 356, 101 N. W. 616; also, 5 Thompson on Corporations (2d Ed.) sec. 6678; *Berger v. Pa. R. Co.,* 27 R. I. 583, 65 Atl. 261, 9 L. R. A. (N. S.) 1214, 8 Ann. Cas. 941, and *Chicago Crayon Co. v. Rogers,* decided by this court in an opinion by Rosser, C., 30 Okla. 299, 119 Pac. 630, wherein plaintiff, an Illinois corporation, sent agents into the Indian Territory and Arkansas to take orders for enlarging pictures. The orders, when taken, were sent to it at its home office in Chicago, where the pictures were enlarged, and the pictures with frames were shipped by it to agents different from those who took orders, who delivered them to patrons, and collected the money which they remitted to plaintiff. *Held* this was interstate commerce.

"Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent who solicits orders for its goods and forwards them, subject to approval, to the home office, the orders being afterward filled by shipments to the customer. Such an application of the statute would be inadmissible in so far as state statutes are concerned, because, so applied, it would have the effect of imposing a restraint upon commerce between the states or with foreign countries." (19 Cyc. 1272, 1273, and authorities cited in notes.)

In *Wolff Dryer Co. v. Bigler,* 192 Pa. 466, 43 Atl. 1092, the court said:

"Where the foreign corporation has no office or place of business within the restricting state, and no part of its capital is invested there, and the goods are shipped either directly from its factory or upon its orders given to other factories, the fact that its agent came into this state and made contracts for machinery to be delivered here, did not bring it within the inhibition of the Act of 1874."

In view of the fact that H. A. Murrelle was sent into the state by defendant merely for the purpose of advertising its goods, although he was permitted to take orders where he found demand for same and send such orders in to the Oklahoma City Hardware Company to be filled out of its stock, and in view of the further fact that he was not authorized to make any contracts for or in the name of the defendant company within the state, under the overwhelming line of authorities which hold that similar acts do not constitute "doing business" within the state, it is clear that the acts of Murrelle were not such as would bring defendant within the term "doing business" within the state, and that, therefore, the service upon the Secretary of State was void, and that the order of the court below in setting aside such judgment should be sustained.

Therefore the order and judgment of the court below should be affirmed.

By the Court: It is so ordered.