**MARLOW et al. v. HINMAN MILKING MACH. CO., Inc.**

Civil Action No. 479.

District Court, D. Minnesota,
Second Division.

Nov. 26, 1947.

---

752

Moonan, Moonan & Friedel, of Waseca, Minn., and Moonan, Sturner & Heinen, of New Prague, Minn., for defendant, for the motion.

Gallagher, Farrish & Sheran, of Mankato, Minn., for plaintiffs, in opposition.

NORDBYE, District Judge.

Plaintiffs are copartners doing business in Mankato, Minnesota, as the J. C. Marlow Co. From about 1912 until January 8, 1947, this copartnership was the distributer of Hinman milking machines and parts in Minnesota and certain other states. On or about January 8, 1947, defendant cancelled the distributing contract for reasons not now material and shortly thereafter hired some of the persons working for plaintiff on the Hinman milking machine business to work for defendant on the same business. Plaintiffs are bringing this action for the alleged breach and wrongful cancellation of the distribution contract and for defendant's allegedly causing certain of plaintiffs' employees to breach their employment contracts with plaintiffs and to work instead for defendant or others.

Service was made upon one Henry R. Schranck, who plaintiff claims is defendant's proper agent for service in Minnesota. Defendant had not appointed an agent for service in Minnesota, and, appearing specially, it now moves to set aside and vacate the service upon two grounds: (1) Defendant corporation is not "doing business" in Minnesota; and (2) Schranck was not a proper person for service even if defendant is doing business here.

The courts have consistently reiterated the rule that a foreign corporation is subject to service of process, and therefore subject to the court's jurisdiction, only in states in which the corporation is doing business. People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.

Cas.1918C, 537; North Wisconsin Cattle Co. v. Oregon Short Line R. Co., 1908, 105 Minn. 198, at page 205, 117 N.W. 391. Otherwise, the statute subjecting the corporation to the jurisdiction violates the due process clause of the Fourteenth Amendment to the Federal Constitution. 20 C.J.S., Corporations, § 1919.

Whether a corporation is "doing business" within a given state cannot be determined by any rule of thumb. Each case must turn on its own facts. International Harvester Co. of America v. Commonwealth of Kentucky, 1913, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Vilter Mfg. Co. v. Rolaff, 8 Cir., 1940, 110 F.2d 491; Roark v. American Distilling Co., 8 Cir., 97 F.2d 297. However, the Supreme Court of the United States has enunciated and applied certain rules which are controlling in determining what facts are important and if the facts sufficiently establish that the company is "doing business" within the state. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057, is that court's most recent pronouncement. At page 316, of 326 U.S., at page 158 of 66 S.Ct., the then Chief Justice Stone wrote for the court:

" * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 132 A.L.R. 1357. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A.1917F, 458. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777, 145 A.L.R. 1113. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L. Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L. Ed. 1158, 88 A.L.R. 170."

This requirement, he said, at page 317, of 326 U.S., at page 158 of 66 S.Ct., "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, [2 Cir.], 45 F.2d 141."

And further, at page 319 of 326 U.S., at page 160 of 66 S.Ct.:

" * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra [95 U.S. 714, 24 L.Ed. 565]; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67, L.Ed. 573."

These rules may, as defendant here contends (but this Court does not decide), continue to recognize the rule that "mere solicitation" of orders or acts incidental thereto by a foreign corporation's employees do not cause that corporation to be doing business in the state. But that rule is now quite restricted. The trend of the modern decisions is to hold the foreign corporation within more strict limits of accountability in local courts. As now, Justice Rutledge of the Supreme Court held while serving in the Court of Appeals for the District of Columbia, " * * * very little more than 'mere solicitation' is required * * *" to render a foreign corporation " 'present' for jurisdictional purposes." Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 515, 146 A.L.R. 926. The United States Supreme Court appears to have verified this in International Shoe Co. v. State of Washington, supra. In that case the defendant manufactured footwear in Missouri and maintained no office in the State of Washington, where

it had been served and sued. It employed eleven to thirteen salesmen in Washington under the direct supervision and control of a sales manager in St. Louis, Missouri. The salesmen were residents of, and lived in, Washington. Their principal activities were confined to Washington. The salesmen showed samples to prospective customers and sometimes rented permanent or temporary sample rooms in buildings or hotels. Their authority was limited to "exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant." The orders were transmitted to the defendant's Missouri office for acceptance or rejection, and the merchandise was shipped f. o. b. from points outside Washington to purchasers in Washington. All merchandise shipped into Washington was invoiced at the place of shipment, and collections were made from that point. None of the salesmen were authorized to make collections or to enter into any contracts. Upon those facts, the Supreme Court held that the International Shoe Company's contacts with, and activities in, the State of Washington were such that it was "doing business" in that state.

The facts found in the instant case favor a like conclusion in the instant case even more strongly than did the facts in the International Shoe Company case. In the instant case, the defendant employed "blockmen" in Minnesota. All were hired in Minnesota. And all performed all their work in Minnesota. They were full time employees and residents of Minnesota. Their duties were varied. They sold defendant's product to dealers authorized to sell the defendant's milking machines, and these dealers in turn sold to the consumer trade. But the blockmen's duties extended far beyond merely soliciting orders. They were more than mere salesmen. Their duties included arranging with the dealers for, and encouraging, advertising by the dealer. Defendant furnished mats for those advertisements free of charge. The blockmen also advised and aided dealers who needed help in setting up milking units, and helped place them in operation on the farms of those purchasing units. They were required to make certain that the dealers used the authorized repair station, and that the dealer understood and used the factory repair service. At various times the blockmen, pursuant to their employment contract with defendant, even performed minor repairs and alterations and service upon the milking machines. They also were required to aid dealers in shipping equipment requiring repair work by the factory. The evidence further shows that the blockmen arranged for new dealerships and sometimes cancelled existing ones. The record does not show that defendant objected to any of these activities, or did not authorize them. Likewise, the "blockmen" determined the dealers who should receive credit privileges. That is, credit privileges were extended to the dealers by defendant only upon approval of the "blockman" in the area and after consideration of the matter by the "blockman." Thus, it seems apparent that the "blockman" was the determiner of credit practices with respect to his dealers, at least when credit was first extended to him. Other duties also were performed by the blockmen. Plaintiffs' Exhibit 26, for example, is a letter directing one blockman to pick up one of the defendant's signs from a certain location and to "endeavor to sell it to some other dealer."

These blockmen were paid on the basis of the amount of merchandise they sold. And in the first three months of 1947, their activities caused a continuous flow of approximately $60,000 worth of defendant's products into Minnesota via truck from Oneida, New York. The truck was leased by defendant and came into this area approximately every two weeks. In order to facilitate the handling of its business in Mankato and elsewhere, the defendant leased a warehouse in Mankato, Minnesota, for the temporary storage of its milking machines, and when the truck transporting Hinman products came from Oneida, New York, to Mankato, the supplies were unloaded and stored temporarily at this warehouse and later shipped to various distributors in this area. In January, 1947, the Mankato

Implement Company at Mankato was appointed an authorized agency for merchandising and servicing Hinman products. In the beginning, this company was paid $20 per month by the defendant for acting as an authorized Hinman repair service station. Later, however, this consideration was increased to $340 per month. The increase, according to the defendant, is said to be due to the competition the plaintiff company was giving in the immediate territory because it was disposing of the Hinman milkers it had on hand at a greatly reduced price, and the monthly increase to the Implement Company was to subsidize this agency during the time that this unexpected competition continued. Mr. Schranck, the defendant's sales manager in Minnesota, made his headquarters in the office of the Implement Company, where he had a desk and the privilege of availing himself of stenographic services. The employees of the Implement Company assisted in the loading and unloading of supplies which came to the warehouse at Mankato. However, it is defendant's position that such services were rendered voluntarily and were in no way covered by the $340 monthly allowance which was made to this concern.

The blockmen were hired in Minnesota by Mr. Schranck. He was a resident of Minnesota, and his home was in North Mankato, Minnesota. The blockmen were accountable to him. He was the one who called the meeting at which all the blockmen for Minnesota were hired and after which each blockman cancelled his contract of employment with plaintiffs. The hotel accommodations for the meetings were paid for either by the manager or defendant. The sales manager's duties extended beyond merely supervising sales and salesmen. He was to be called upon by the blockmen, distributor, or others when service and repair problems concerning defendant's products arose. Letters to those persons from the defendant's New York office informed them to call upon the sales manager whenever they needed him. The sales manager arranged on behalf of defendant for one distributor for defendant's product, including terms which were approved by defendant via telephone at the time the prospective distributor and the sales manager made the agreement. The sales manager was, on behalf of defendant, the "overseer" of the distributor's advertising for which defendant paid. That is, the distributor's advertising was subject to the approval of the sales manager of defendant in Minnesota. Moreover, the sales manager also was authorized, and did, purchase at least one sign for that distributor, and appears to have been more of a "district manager" than a sales manager for this state.

That defendant's motion must be denied seems apparent from the recital of those facts, for under those facts it seems clear that defendant, through its employees in Minnesota, was doing more than "mere solicitation" of orders. A fair appraisal of them in the light of the Supreme Court's decision in the International Shoe Company case, supra, and other decided cases establishes that defendant was "doing business" in Minnesota when the summons was served upon Mr. Schranck. See, for example, International Harvester Co. v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Dahl v. Collette, 1938, 202 Minn. 544, 279 N.W. 561; Dobson v. Maytag Sales Corporation, 1940, 292 Mich. 107, 290 N.W. 346; State v. District Court, 1936, 102 Mont. 274, 57 P.2d 772, 113 A.L.R. 1, and other cases cited therein.

The fact that defendant ships the machines to the Mankato Implement Company, its Minnesota distributor, or directly to the dealer from New York does not control here in view of the above facts. It is well settled that the mere fact that the foreign corporation's business is an interstate business does not mean that it cannot be subjected to the jurisdiction of the state in which it is "doing business." The two situations are not antagonistic. International Harvester Co. of America v. Commonwealth of Kentucky, 1913, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Vilter Mfg. Co. v. Rolaff, 8 Cir., 1940, 110 F.2d 491, 497; Liquid Veneer Corporation v. Smuckler, 9 Cir., 1937, 90 F. 2d 196. And, obviously, the shipment by

defendant to Minnesota would come from New York whether defendant is or is not doing business in Minnesota, and seems immaterial here. Moreover, the fact that defendant had been doing business only a short time in Minnesota seems unimportant in this case. As the court stated in the International Shoe Company case, supra, the quality, not the quantity, of the activities controls. There is no evidence that defendant intended to carry on its activities in the manner shown by the record only for a short time. They were not shown to be temporary ones. The question is whether defendant was "doing business," not the length of time it was doing business. The time is not so short here as to question the conclusion that the defendant was subject to the jurisdiction of Minnesota courts.

The defendant is not necessarily inconvenienced or prejudiced by the fact that it is a New York corporation which must try the case in Minnesota. On the contrary, the Midwest, including Minnesota, is one of its largest sales districts. The majority of witnesses required in this case appear to be available personally in Minnesota. The alleged cause of action arose here. More people who appear to know something about the case's issues are available in Minnesota than in New York. Under all the circumstances, no such hardship appears to be threatened as to justify a finding as sought by defendant.

The only further question which requires discussion is if Mr. Schranck was the proper person to serve in order to subject defendant to this Court's jurisdiction. From the exhibits and the evidence, he appears to be the one whom defendant considered, and who in fact was, the resident man in charge of the Minnesota territory for defendant. His duties and his activities were broad, and those, not his title, must control. Service upon him could reasonably be expected to be, and in fact was, communicated to defendant. Under all the circumstances, the service upon defendant through Mr. Schranck, its agent in Minnesota, was proper under Rule 4(d) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and also Section 543.08 of Minnesota Statutes of 1945 and M.S.A. Dahl v. Collette, 202 Minn. 544, 279 N.W. 561; Loken v. Diamond T Motor Car Co., 216 Minn. 223, 12 N.W.2d 345; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915.

Defendant's motion to vacate and set aside the summons served upon Henry Schranck as defendant's agent should be, and hereby is, denied. It is so ordered. Defendant shall file its answer herein or otherwise plead within ten days after the date of this order.

An exception is allowed to the defendant.