**S. HOWES CO., Inc.**
v.
**W. P. MILLING CO.**

No. 35275.

Supreme Court of Oklahoma.
July 7, 1954.

Rehearing Denied Sept. 28, 1954.

Banker, Bonds & Wilcoxen, Muskogee, for plaintiff in error.

T. L. Gibson, Norman & Wheeler, Muskogee, for defendant in error.

JOHNSON, Vice Chief Justice.

This is an action brought by W. P. Milling Company, a corporation, as plaintiff, against the defendants, Ward R. McGavren and S. Howes Company, Inc., a foreign corporation, for damages resulting from alleged breach of warranty of fitness of certain milling machinery purchased from defendants. The parties will be referred to as they appeared in the trial court.

The case was tried to a jury and resulted in a verdict and judgment in favor of plaintiff and against the one defendant only, S. Howes Company, who has perfected this appeal. Verdict and judgment having been in favor of the other defendant, McGavren, he need not be further considered as a party to the litigation. The defendant, S. Howes Company, was a foreign corporation not domesticated in this state and service of summons was had upon it by service on the Secretary of State. At every stage of the proceeding, the defendant objected to the jurisdiction of the court over it because it was a foreign corporation. That is the only proposition presented here. Therefore, the only question necessary for determination is whether or not said defendant was doing business, or had done business, in this state, making it amenable to legal process herein.

The plaintiff was organized for the purpose of constructing and operating a grain mill in Muskogee, Oklahoma. For all purposes of the case before us, all of the acts occurred in the year 1948. At that time, Ward R. McGavren was an independent broker, dealing in mill machinery on commission, with his place of business in Oklahoma City. He had not had previous dealings with the defendant. The plaintiff desired purchasing a corn with cob and husk separator. It had purchased other mill machinery through McGavren and had ordered a separator, but was unable to get delivery on it. On January 12, McGavren mailed to the plaintiff information and circulars on a machine manufactured by defendant and recommended the purchase of a certain type and size. Inclosed in the letter were order blanks which McGavren recommended be filled out and mailed to the defendant in care of him, McGavren. The machine was ordered in the manner suggested, for delivery not later than June. McGavren acknowledged receipt of the order and forwarded it to the defendant. It was necessary that the order be accepted by the defendant at its home office, the machine to be shipped direct to the plaintiff. Previous to the order, McGavren explained the situation to the defendant and asked that the machine be guaranteed. In reply, the defendant wrote McGavren that it would guarantee the machine to perform as represented.

During the ensuing months, McGavren, after collaborating with defendant, gave detailed instructions to the plaintiff for all construction of the elevator and shuck house. Plaintiff built these structures in conformity with the instructions. There was considerable delay in the delivery of the machine and, before its shipment, the defendant had McGavren make an investigation of the different routes for the purpose of determining the best and fastest way to ship. It was shipped directly from the defendant's plant f. o. b. to the plaintiff, arriving the early part of October. Shortly thereafter, McGavren was in Muskogee, while the machine was being installed. He asked one of the officers of the plaintiff if the invoice had been received. When informed that it had, he remarked that there was a discount if the purchase price was paid immediately. A check therefor was written by plaintiff to defendant and delivered to McGavren who forwarded it to said defendant. He was to receive his sales commission from the purchase price.

After the installation was complete, the machine was put into operation, and, within a few hours, the shucks were set on fire by the friction and carried into the shuck house while still burning. The resulting fire destroyed the shuck house. McGavren was notified and he went to Muskogee. When he was there, the machine was again

started and another fire resulted. McGavren immediately called the defendant by telephone to report the condition. The defendant then notified a salesman in Kansas City to investigate, which he did. The defendant then wrote plaintiff that, based upon the report, other fans were being sent to be substituted in the mill. The trouble was not eliminated and defendant offered to take the machine back. The plaintiff refused the offer because of its losses, troubles, and the expenses necessary for removal and return of the machine. This action was filed for recovery of the damages on April 26, 1950.

Plaintiff in Error cites, quotes from, and principally relies upon the case of Wills. v. National Mineral Company, 176 Okl. 193, 55 P.2d 449. There the question was whether the undomesticated foreign corporation was doing business within the state so as to be sued in this state and service of process obtained upon it. Therein we held that the quality, character and quantity of business conducted within the state may be sufficient to subject a foreign corporation to local process and yet be insufficient to require it to take out a license.

As will be readily seen from a reading of some of the recent cases discussed in leading Law Review articles (see Vol. 1 Okl.Law Review, 294-5 (1948); Vol. 45 Mich.Law Review, 218-21 (1946); 25 Col. Law Review, 1018 (1925); Vol. 16 Univ. of Chicago Law Review 523-24 (1949); Vol. 26 Univ. of So.Cal.Law Review, 215-16), dealing with the subject of the meaning of "doing business" for the purpose of making a foreign corporation amenable to local process, there is no rule of thumb by which determination may be made as to what constitutes the required amount of transacting business. Each case must depend upon the character of its particular facts. This, in substance, was the holding in the Wills case, supra. While this principle is approved by a majority of the courts, it is of little help in determining whether specific activities constitute such "doing of business" as to make the foreign corporation liable to local process.

In Oklahoma the question is raised chiefly by two statutes, Title 18 Okl.Stat.Ann. §

1.17 and § 472, which provide in effect that any foreign corporation "engaging in or transacting business" within the state can be sued and served by local process. Whenever the question has been raised of whether a corporation's activities within the meaning of these statutes constitutes "doing business" (a term not defined by statute) this Court has held almost without exception that the corporation was liable to local process. For cases see 4 Oklahoma Digest Corporations, Recent cases, Wills case, supra; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Jeter v. Austin Trailer Equipment Co., 122 Cal.App.2d 376, 265 P.2d 130 and Kneeland v. Ethicon Suture Laboratories, Inc., 118 Cal.App.2d 211, 257 P.2d 727, indicate a definite disposition to broaden the application of the term "doing business". In Isaacs "An Analysis of Doing Business" 25 Col.Law Review 1018, supra, the author distinguished "doing business" under three legal purposes, namely, service of process, taxation, and qualification, the degree of activity required rising in the order named. The multiple standard for "doing business" is categorically stated to be the law in 20 C.J.S., Corporations, § 1828, and was recognized in the Wills case, supra.

It is argued that the factual situation in the instant case indicates only an isolated transaction, or a single transaction was not continuous in nature, and therefore, did not constitute "doing business" within the State, subjecting defendant to local process. Such argument is not based upon reason and justice. Courts of a particular state should have jurisdiction over all disputes arising out of contracts made (or to be performed) within the state, regardless of the number of contracts of the defendant which were made (or to be performed) there. Moreover, the test as to what activities will subject the foreign corporation to suit is "qualitative" not simply "mechanical" or "quantitative". Marlow v. Hinman Milking Machine Co., D.C., 7 F.R. D. 751, 753, and cases cited therein. Therein it was said that the question is whether defendant was "doing business"

not the number of transactions or length of time it was doing business. The defendant there was a foreign corporation whose agents solicited orders for milking machines, which were shipped by the corporation from its factory located in another state. Its agents advised with the purchasers how to use, or operate the machines and sometimes made minor repairs. There the facts were held sufficient to constitute "doing business" within the state. To substantiate the holding, the court, in the opinion, said:

"* * * The trend of the modern decisions is to hold the foreign corporation within more strict limits of accountability in local courts. As now, Justice Rutledge of the Supreme Court held while serving in the Court of Appeals for the District of Columbia, '* * * very little more than "mere solicitation" is required * * *' to render a foreign corporation ' "present" for jurisdictional purposes.' Frene v. Louisville Cement Co., 1943, 77 U.S. App.D.C. 129, 134 F.2d 511, 515, 146 A.L.R. 926. The United States Supreme Court appears to have verified this in International Shoe Co. v. State of Washington, supra. In that case the defendant manufactured footwear in Missouri and maintained no office in the State of Washington, where it had been served and sued. It employed eleven to thirteen salesmen in Washington under the direct supervision and control of a sales manager in St. Louis, Missouri. The salesmen were residents of and lived in, Washington. Their principal activities were confined to Washington. The salesmen showed samples to prospective customers and sometimes rented permanent or temporary sample rooms in buildings or hotels. Their authority was limited to 'exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant.' The orders were transmitted to the defendant's Missouri office for acceptance or rejection and the merchandise was shipped f. o. b. from points outside Washington to purchasers in Washington. All merchandise shipped into Washington was invoiced at the place of shipment, and collections were made from that point. None of the salesmen were authorized to make collections or to enter into any contracts. Upon those facts, the Supreme Court held that the International Shoe Company's contacts with, and activities in, the State of Washington were such that it was 'doing business' in that state."

■ In keeping with the modern trend of judicial action we hold that facts herein disclose sufficient grounds for holding that defendant, a foreign corporation, was doing business within the state of Oklahoma and amenable to local legal process thereby rendering it present for jurisdictional purposes.

Judgment affirmed.

WELCH, CORN, ARNOLD and BLACKBIRD, JJ., concur.

HALLEY, C. J., and DAVISON, O'NEAL and WILLIAMS, JJ., dissent.

DAVISON, Justice (dissenting).

I do not concur in the opinion of the majority of the court in this case and desire to express my reasons therefor. I do not agree with the very broad rule therein adopted, defining the meaning of the term "doing business" as used in 18 O.S.1951 § 472, nor do I think the defendant herein was doing business within this State under either definition, whether broad or restricted.

For many years, the law of this State, regarding such situations, has been that stated in the case of Harrell v. Peters Cartridge Co., 36 Okl. 684, 129 P. 872, 876, 44 L.R.A., N.S., 1094, wherein the words of the Federal Circuit Court were quoted and approved, as follows:

" 'Any law which provides that the sale of goods by a foreign corporation through soliciting agents, who take orders subject to approval at the home office, is doing business within the state, is void, because it is an interference with interstate commerce.' Davis &

Rankin Mfg. Co. v. Dix (C.C.), 64 F. 406."

That rule was recognized and the guide-posts for its application were enumerated and explained in the case of Wills v. National Mineral Company, 176 Okl. 193, 55 P.2d 449, 453 cited in the majority opinion herein. This last cited case does not support the views expressed in the majority opinion in the case at bar, as is apparent from the following excerpt therefrom:

"Business is largely the barter, sale, or exchange of things of value, usually property. 'Doing' business is therefore the engaging in such pursuit. The doing of business involves not only the ownership, possession, or control of property, but such functions as dealing with others in reference to the property, the exercise of discretion, the making of business decisions, the execution of contracts. It includes the functions of marketing the product, by advertising and solicitation, and of collecting for the sold product. It may conservatively be said that wherever an important combination of these functions is being performed, business is being done. * * *"

That rule has, in effect, been adopted in a majority of the jurisdictions. It was more recently expressed in different language by the United States Court of Appeals for the Tenth District, in the case of Steinway v. Majestic Amusement Co., 179 F.2d 681, 18 A.L.R.2d 179, as follows:

"Each case must be determined on its own facts but general rule is that to constitute 'engaging in or transacting business' in the state so as to be found or present for purposes of personal service, a nonresident corporation's activity there must be substantial, continuous and regular as distinguished from casual, single or isolated acts."

By implication, the opinion of the majority adopts the very broad rule that " 'very little more than "mere solicitation" is required * * *' to render a foreign corporation ' "present" for jurisdictional purposes' ", which appears, therein, in a quotation from the case of Marlow v.

Hinman Milking Machine Co., D.C., 7 F.R.D. 751, 753. I do not believe that the Harrell case and the Mills case should be so modified or overruled. But, if that be the desire of the majority of the court, I think it should be clearly so stated in order to avoid much future confusion.

However, it makes no difference in the case now before us whether we follow the established rule or ·adopt the broad interpretation favored in the majority opinion. The defendant was not answerable to service of process in this State and no case is cited, wherein the facts are analogous to those herein.

A corporation can only act through its officers and agents. The defendant strenuously denies that it had any agent in Oklahoma through whom it was doing business here. This brings us to a determination of whether or not McGavren acted as an agent for defendant. He was an independent machinery broker dealing with the products of many manufacturers on commission. He was not an employee or recognized agent of the defendant. His every act, as disclosed by the record, was for the benefit of plaintiff. I cannot agree that his relationship to either party was that of an agent, and, certainly, not of defendant. Plaintiff was in need of a certain machine. Because of numerous business transactions with him, plaintiff's manager sought McGavren's help. He made investigation and did find a machine he thought was suitable. He secured explanatory data and an order blank which he forwarded on to plaintiff with his recommendation as to size and type. This was the information plaintiff had requested from him. To further serve plaintiff, he suggested that the order be completed and returned to him and he would send it to defendant for acceptance or rejection. That did not make him defendant's agent.

His next act was when plaintiff was requested to designate the desired route of shipment. He worked that out for and with plaintiff and instructed defendant to ship over said route. All mail order houses request a buyer to express preference in such matters. After the machine was delivered he reminded plaintiff of the saving

it could make by way of discount, if the purchase price was paid within a limited time. He mailed plaintiff's check to defendant. These acts did not mark him as defendant's agent.

When the machine did not properly function, he went to Muskogee to get first hand information, after being called by plaintiff. After seeing the condition, he notified the defendant, which plaintiff otherwise would have had to do. I do not think that conduct made him an agent of defendant.

My conclusion is that McGavren was not an agent and that the following statement made in the syllabus of the majority opinion is erroneous and unsupported by the record, to-wit:

"* * * and the manufacturer, after a long distance telephone conversation with its Oklahoma broker (or agent) * * *"

Since McGavren was not an agent, the only action of the defendant in Oklahoma had to be the acts of the only person who was an agent—the salesman from Kansas City who was sent to investigate the fire. His only act in this State was to investigate and report to the defendant. Under no intrepretation could those acts be construed as the "doing of business".

The majority opinion states the true test "as to what activities will subject the foreign corporation to suit is 'qualitative' not simply 'mechanical' or 'quantitative'. Marlow v. Hinman Milking Machine Co., D.C., 7 F.R.D. 751 * * *." In every case cited in the majority opinion wherein service was attempted, and the corporation was held to be doing business within the state, the corporation had one or more resident employees or agents actively performing some necessary function in the state. In the instant case, the only act done by an agent in Oklahoma was that the Kansas City salesman came down after the fire to look and report.

Turning now to the cases cited in the majority opinion, the Wills case has been hereinabove distinguished. In the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 157, 90 L.Ed. 95, the facts were that:

"* * * appellant employed eleven to thirteen salesmen under direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. The commissions for each year totaled more than $31,000. Appellant supplies its salesmen with a line of samples, each consisting of one shoe of a pair, which they display to prospective purchasers. On occasion they rent permanent sample rooms, for exhibiting samples, in business buildings, or rent rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals is reimbursed by appellant."

In the cited case, therefore, approximately a dozen residents of the state were employed full time for displaying merchandise and soliciting orders.

The case of Jeter v. Austin Trailer Equipment Co., 122 Cal.App.2d 376, 265 P.2d 130, 131, is readily distinguished from the case at bar by analyzing the facts therein, as stated in the 6th syllabus, as follows:

"Where person had solicited orders at behest of foreign corporation, and corporation had kept merchandise within state and had filled orders from local stock, and had partially contributed to payment of such person's business rental, and there had been a judicial determination that corporation was doing business within the state so as to be amenable to service of process, even if corporation thereafter had discontinued keeping stock within the state and had discontinued payments toward such person's rental, in view of fact that it had thereafter continued to retain such person for solicitation of orders, corporation was 'doing business' within the state and was amenable to service of process."

The same is true of the case of Kneeland v. Ethicon Suture Laboratories, Inc.,

118 Cal.App.2d 211, 257 P.2d 727, wherein the 2nd syllabus is, as follows:

"Foreign corporation engaged in manufacture of surgical supplies, whose employees, engaged in sales promotion work within state, did just about everything that full-fledged sales agents might do except taking of orders, delivery of goods, and collection of sales price, could, without doing violence to due process requirements, be subjected to jurisdiction of court within state."

The case of Marlow v. Hinman Milking Machine Co., supra, is primarily relied upon and quoted from as supporting the majority view in the case at bar. Therein, the defendant foreign corporation employed a number of full time workers, residents of Minnesota, hired in said state to work in said state. They sold defendant's product to dealers, but their "duties extended far beyond merely soliciting orders. They were more than mere salesmen. Their duties included arranging with the dealers for, and encouraging, advertising by the dealer. Defendant furnished mats for those advertisements free of charge. The blockmen also advised and aided dealers who needed help in setting up milking units, and helped place them in operation on the farms of those purchasing units. They were required to make certain that the dealers used the authorized repair station, and that the dealer understood and used the factory repair service. At various times the blockmen, pursuant to their employment contract with defendant, even performed minor repairs and alterations and service upon the milking machines. They also were required to aid dealers in shipping equipment requiring repair work by the factory. The evidence further shows that the blockmen arranged for new dealerships and sometimes cancelled existing ones. The record does not show that defendant objected to any of these activities, or did not authorize them. Likewise, the 'blockmen' determined the dealers who should receive credit privileges. That is, credit privileges were extended to the dealers by defendant only upon approval of the 'blockman' in the area and after consideration of the matter by the 'blockman.' Thus, it seems apparent that the 'blockman' was the determiner of credit practices with respect to his dealers, at least when credit was first extended to him. Other duties also were performed by the blockmen. Plaintiffs' Exhibit 26, for example, is a letter directing one blockman to pick up one of the defendant's signs from a certain location and to 'endeavor to sell it to some other dealer.' "

I have been unable to find any case from any jurisdiction, including those cited in the majority opinion, wherein facts comparable to those herein identified the defendant as doing business in the state even where the acts were performed by a regular agent or employee. In the instant case, McGavren was no employee. He was an independent broker whom plaintiff asked to recommend a suitable machine.

Not only should the courts of a particular state "have jurisdiction over all disputes arising out of contracts made (or to be performed) within the state" (as stated in the majority opinion) but they do have such jurisdiction. Here, however, the contract was made in the State of New York when the defendant accepted the order. It was performed in the State of New York when the merchandise was delivered to the carrier, for delivery to plaintiff. As pointed out above, I need not, in the instant case take issue with the rule adopted, regardless of how broad it is, because it could have no application here. An out-of-state agent coming into Oklahoma to inspect a machinery installation does not constitute the doing of business by his foreign corporation employer who had sold the machine in New York, and, there, delivered it to the carrier for delivery F.O.B. to the purchaser.

I do not think the trial court had jurisdiction of the defendant, and, therefore, respectfully dissent.

I am authorized to state that the dissenting views in this opinion are concurred in by HALLEY, C. J., and O'NEAL and WILLIAMS, JJ.