The Attorney General is in receipt of your letter wherein you ask, in effect, the following question: Are municipal hospital authorities and municipal housing authorities subject to the Political Subdivision Tort Claims Act? In effect, the question raises two distinct issues and we respond accordingly. In 1978, the Oklahoma Legislature enacted the Political Subdivision Tort Claims Act, codified as 51 O.S. 151 [51-151] — 51 O.S. 170 [51-170] (1978), wherein the scope and extent of tort liability imposed upon political subdivisions was defined. The Act provides a remedy to those who have suffered a loss as a result of certain tortious acts committed by political subdivisions or their agents. The Act includes several definitions in 51 O.S. 152 [51-152]: "1. 'Agency' means any board, commission, committee, department or other instrumentality or entity designated to act in behalf of a political subdivision. "2. 'Employee' means any person who is acting or who has acted in behalf of a political subdivision or an agency whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis. Employee also includes all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but shall not include independent contractors. "3. 'Loss' means injury or death of a person or damage to real or personal property. "4. 'Municipality' means any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality. "5. 'Scope of employment' means an employee was acting in the performance of the duties of the office or employment or was performing tasks lawfully assigned by a competent authority. "6. 'Political subdivision' means either an incorporated city or town, a school district or a county and all their institutions, instrumentalities or agencies." A plain reading of the Act establishes that the definition of a "political subdivision" does not specifically include either hospital or housing authorities. It follows, therefore, that such entities are subject to the provisions of the Act only if they constitute an "agency" of a political subdivision covered by the Act. 51 O.S. 152 [51-152](1) provides in pertinent part: " 'Agency' means any board, commission, committee, department or other instrumentality or entity designated to act on behalf of a political subdivision." (Emphasis added) The emphasized language implies the existence of an agency relationship between the municipality and the authority. An agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other should act on his behalf and be subjected to his control and consent by the other so to act. Restatement 2d, Agency, 1. An essential characteristic of agency is control of the principal over the agent. Where no right to control exists, there is no agency. Harrell v. Peters Cartridge, 36 Okl. 684,129 P. 872 (1913). The answer to your inquiry will be limited to the applicable principals of agency. A. Hospital Authorities This opinion is limited to those hospitals brought to life by a municipality as provided by 11 O.S. 30-101 [11-30-101] et seq. (1978). A careful reading of the provisions thereof reveal that all major functions of the authority, including the adoption of rules and regulations and staffing is subject to approval of the governing body. Likewise, title to all property of the hospital rests in the name of the municipal body as special trustee. Once established, a hospital authority so created is subject to direct control of the municipality. Where such control exists the existence of the agency relationship is present. The Tort Claims Act provides that all political subdivisions are subject to its provisions. A city, by definition, is a political subdivision. A hospital authority, established under 11 O.S. 30-101 [11-30-101] et seq. (1978), acts on behalf of and is the instrumentality or agent of the municipality in which it operates. It follows that the hospital authority is subject to the provisions of the Political Tort Claims Act. B. Housing Authorities Created by statute, a public housing authority is endowed with specific enumerated powers, among them the capacity to sue and be sued, to hold and transfer property in its own name and to adopt rules and regulations. 63 O.S. 1061 [63-1061] (1971). It is evident from the provisions that such authorities, once brought to life, operate with little interference from the municipality or county within which it operates. Again, resort must be had to the law of agency wherein the key characteristic of the existence of the relationship is the right to control. There is not the requisite control on the part of a city where the only action required by the municipality to create a housing authority is to declare that a housing need exists. Viewed in context of the foregoing discussion, a housing authority created pursuant to 63 O.S. 1051 [63-1051] et seq. (1971), is not an agent or instrumentality of the city or county in which it operates nor a "political subdivision" as defined by the Political Subdivision Tort Claims Act. It is, therefore, the official opinion of the Attorney General that: 1. Public hospital authorities created pursuant to 11 O.S. 30-101 [11-30-101] et seq. (1978), are subject to the Political Subdivision Tort Claims Act. 2. Public housing authorities created pursuant to 63 O.S. 1051 [63-1051] (1971), are not instrumentalities of the city or county within which they sit and, therefore, are not subject to the Political Subdivisions Tort Claims Act. (RONALD LEE JOHNSON) (ksg) ** SEE: OPINION NO. 88-601 (1988) (UNPUBLISHED) ** ** SEE: OPINION NO. 80-021 (1980) **