KINGKADE HOTEL CO. v. KEGGIN.

No. 35356.    May 19, 1953.

*257 P. 2d 504.*

Suits & Weiss, Oklahoma City, for plaintiff in error.

Sam J. Montgomery, Oklahoma City, for defendant in error.

PER CURIAM. The parties on this appeal will be referred to as they appear in the trial court, T. E. Keggin, plaintiff and Kingkade Hotel, defendant. The plaintiff in his petition asserted two causes of action against the defendant; one cause of action for wrongful ejectment from a hotel room and the other cause of action for conversion of his baggage. The defendant denied both the alleged ejectment and the alleged conversion. The case was submitted to a jury and the verdict was in favor of the plaintiff. Judgment was entered for the plaintiff, and defendant appeals.

The testimony of plaintiff's witnesses and defendant's witnesses as to various conversations which took place at the Kingkade Hotel is conflicting, but, as the jury found for the plaintiff, we will assume the correctness of the testimony on his behalf as to these conversations.

The plaintiff testified that he registered as a guest of the Kingkade Hotel on the 23rd day of April, 1951. At the time he registered the hotel clerk stated to him that they might have to move him during the week. He was assigned a room which he proceeded to occupy. A day or so after he registered at the hotel he was informed by a clerk that he would have to give up his room because there was a big convention in Oklahoma City, and. that the hotel would have to give its rooms to the people attending the convention. The plaintiff could not find another room and did not give up his room in the hotel. On the evening of the 26th of April, when he returned to his room, he found that all of his baggage had been moved out of the room by the hotel employees. He and a friend of his then went to the clerk at the desk of the hotel and he tendered the clerk a week's room rent which the clerk refused to take. At that time he owed the hotel for the three days he had occupied the room, at the rate of $2.50 per day or $7.50, and he also owed a laundry bill of $1.22. He did not attempt to pay these items except in his tender of the room rent for one week. The night of the 26th, he stayed at the home of a friend. On May 9, 1951, he instituted this suit for wrongful ejectment from the hotel room and for the value of his baggage which he alleged the defendant had converted. He, himself, made no demand for the baggage from the 26th day of April, 1951, until July 28, 1951. In the early part of June, a friend of the plaintiff went to the hotel to get the plaintiff's baggage. According to him he was informed that the man who had the key to the room in which the baggage was stored was not there. He waited about 30 or 40 minutes and then left the hotel. Some ten days later another friend of the plaintiff went to the hotel to demand the baggage. According to him he was informed by Mr. Kingkade that the hotel would not release the baggage until he procured written authority from the plaintiff or the plaintiff's attorney, and that Mr. Kingkade informed him that the plaintiff would have to give a release from all lawsuits in order to get the baggage. Thereafter, on July 28, 1951, the plaintiff did go to the hotel, paid his bill of $8.72, and all the baggage which the hotel had held was turned over to him.

The plaintiff stated that he had stayed at the hotel, prior to the occasion of his registering on the 23rd, for about a month during part of March and April, 1951. He stated that he had been ren-

dered bills during that period of time at the end of each week and had paid such bills.

Over objection of the defendant the plaintiff testified that he had bought clothes of the approximate value of $35 or $40 during the time the hotel held his baggage and clothing. He also testified the baggage which the hotel held was worth $1,310.

No testimony was offered by the plaintiff as to any specific damage sustained by him by reason of the ejectment from the hotel room and no testimony was offered other than that just mentioned as to the damage sustained by reason of the retention of the baggage.

No evidence was offered by the plaintiff that the Hotel Kingkade was operated by the defendant, Kingkade Hotel Company.

The defendant's witnesses testified that the room was rented to the plaintiff on a day to day basis only, at a charge of so much per day, and that the plaintiff had been notified when he registered on the 23rd day of April, 1951, that he could only have the room from day to day. They also testified that the hotel held plaintiff's baggage for the payment of the $8.72 due to it and that they refused to deliver the baggage to plaintiff's friends for the reason that they had no written authority from the plaintiff or his attorney and that they were at all times ready to turn the baggage over to plaintiff upon demand by him and upon payment of the bill owed to the hotel.

Martin Kingkade testified for the defendant that there were two separate corporations: Kingkade Hotel Company and Hotel Kingkade, a corporation. He further testified that the corporation, Kingkade Hotel Company, was the owner of the hotel building and of the furniture in it, and that the corporation, Hotel Kingkade, was the corporation which operated the hotel. He testified that he was the president of the corporation, Kingkade Hotel Company, and he was manager of Hotel Kingkade, a corporation. He also testified that he owned stock in both corporations. He stated that the Kingkade Hotel Company, the defendant in this suit, had nothing to do with the operation of the hotel. The testimony that there were two separate corporations, one of which owned the building, and the other operated the hotel, and that this defendant had nothing to do with the operation of the hotel, was uncontradicted. The defendant offered, in evidence, the separate annual corporation license for each of the corporations but the trial court sustained an objection to the introduction of these instruments.

At the conclusion of the testimony the defendant moved that the action be dismissed for the reason that the evidence showed that the defendant corporation was not at any time operating the hotel. This motion was overruled.

The defendant offered an instruction, defendant's instruction No. 2, to the effect that if the jury found from the evidence that the defendant, Kingkade Hotel Company, a corporation, was not operating the Kingkade Hotel, then, and in that event, the plaintiff could not recover from the defendant. This instruction was refused by the court and exception allowed.

The jury brought in a verdict for the plaintiff of $400. It was a general verdict and did not show the amount awarded by the jury on each cause of action. The defendant, before the jury was discharged, objected to the form of the verdict for the reason that it did not disclose on its face upon which cause of action the amount allowed was applicable. This objection was overruled.

The defendant at the trial and here contends that the plaintiff sued the wrong party. In our opinion defendant's contention is sound. The plaintiff alleged in his petition that the defendant, Kingkade Hotel Company, a corporation, was operating the hotel. The burden was on

the plaintiff to prove this. The uncontradicted evidence was that the Kingkade Hotel Company, a corporation, did not operate the hotel but that the hotel was operated by Hotel Kingkade, a corporation. The latter corporation was not made a party to the suit. Although the names of the corporations were similar and the president of one was the manager of the other, nevertheless, they were separate legal entities. There was no proof that one was responsible for the acts of the other.

This court has passed upon this question in the case of Hilliard v. St. Louis & S.F. R. Co., 98 Okla. 22, 223 P. 877. In that case the plaintiff sued St. Louis & San Francisco Railroad Company et al. for personal injuries. In the trial of the case it developed that the defendant, St. Louis & San Francisco Railroad Company, prior to the acts complained of by the plaintiff in that action, had transferred all of its assets to St. Louis-San Francisco Railway Company, a separate and distinct corporate entity. It was this latter corporation which was operating the property at the time of plaintiff's injury. At the trial the plaintiff moved to substitute the name of St. Louis-San Francisco Railway Company for the old company. The motion was denied and the trial court sustained a demurrer to the plaintiff's evidence and rendered judgment for the defendant. The court, in affirming the case, made the following statement:

" * * * It is shown in the record that on the 30th day of August, 1916, the special master in a federal court receivership case, under orders of the court, deeded the property of the St. Louis & San Francisco Railroad Company to the St. Louis-San Francisco Railway Company, so that it was apparent at the time of plaintiff's injury and at the time of the trial, the owner and operator of the Frisco properties was the St. Louis-San Francisco Railway Company, and that it was at the times referred to, a separate and distinct corporate entity from the St. Louis & San Francisco Railroad Company.***

"We think the learned trial judge was correct in refusing to substitute the 'St. Louis-San Francisco Railway Company' for the St. Louis & San Francisco Railroad Company."

A similar question was presented to the Supreme Court of Colorado in the case of Denver & R.G.R. Co. v. Loveland, 16 Colo. A 146, 64 P. 381. It was held in that case as follows:

"1. Where there were two corporations, the D. & R.G. Railway Co. and the D. & R.G. Railroad Co., and on the trial of an action against the former it developed that the acts complained of were committed by the latter, it was error to allow an amendment of the complaint making the latter corporation defendant, on the ground that such amendment was the correction of a misnomer."

In our opinion, these cases are decisive on this issue.

The judgment appealed from is reversed and the case remanded to the trial court, with directions to enter judgment for the defendant at the cost of the plaintiff.

This Court acknowledges the services of Attorneys Bradford J. Williams, Wilbur J. Holleman, and Donald Campbell, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, C.J., JOHNSON, V.C.J., and WELCH, CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.